UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                Plaintiff,

  -against-

JORDANE DOWLING, individually and d/b/a
ELUDZ RESTAURANT & LOUNGE; and
ELUDZ LOUNGE, LLC, an unknown business
entity d/b/a Eludz Restaurant & Lounge,

                Defendants.
------------------------------------------------------------X

REPORT AND
RECOMMENDATION
18 CV 5086 (MKB)(RML)

LEVY, United States Magistrate Judge:

        By order dated April 2, 2019, the Honorable Margo K. Brodie, United States District Judge, referred plaintiff's motion for a default judgment to me for Report and Recommendation. For the reasons explained below, I respectfully recommend that plaintiff's motion be granted with respect to defendant Eludz Restaurant & Lounge ("Eludz") and denied with respect to defendant Jordane Dowling ("Dowling"). I further recommend that plaintiff be awarded $9,396.45 in damages, plus post-judgment interest at the federal statutory rate, and that plaintiff be permitted to move for attorney's fees and costs separately.

### BACKGROUND AND FACTS

        Plaintiff J & J Sports Productions, Inc. ("plaintiff") brought this action on September 10, 2018, alleging that defendants Eludz and Dowling (collectively, "defendants") violated the Federal Communications Act of 1934 (the "FCA"), codified as amended, 47 U.S.C. §§ 553 and 605. (See Complaint, dated Sept. 5, 2018 ("Compl."), Dkt. No. 1.)[1] Plaintiff seeks

---

[1] While plaintiff asserts claims under both sections 553 and 605 in its complaint, in keeping with the law in this circuit, it pursues only its claim under section 605 in this motion. (Motion for
                                                                   (Continued . . .)

statutory damages, enhanced damages, pre- and post-judgment interest, attorney's fees, and costs. (Id. ¶¶ 24, 29; Plaintiff's Memorandum of Law in Support of Application for a Default Judgment, dated Feb. 22, 2019 ("Pl.'s Mem."), Dkt. No. 9-1.) The Clerk of the Court noted defendants' defaults pursuant to Federal Rule of Civil Procedure 55(a) on December 10, 2018. (Clerk's Entries of Default, dated Dec. 10, 2018, Dkt. No. 8.) On February 22, 2019, plaintiff moved for a default judgment against both defendants. (Motion for Default Judgment, dated Feb. 22, 2019 ("Mot."), Dkt. No. 9.) Judge Brodie referred plaintiff's motion to me. (Order Referring Motion, dated Apr. 2, 2019.) I ordered defendants to file any opposing submissions on or before May 15, 2019. (Order, dated Apr. 15, 2019, Dkt. No. 10.) To date, defendants have not contacted the court.

Plaintiff, a California corporation, alleges that it holds the exclusive nationwide commercial distribution rights to the September 12, 2015 telecast of the WBA/WBC World Welterweight Championship Fight between Floyd Mayweather, Jr. and Andre Berto (the "Program"). (Compl. ¶¶ 6, 16.) Plaintiff also alleges that it entered into sublicensing agreements with various commercial establishments to broadcast the Program, including preliminary matches, the main event, and commentary. (Id. ¶ 17.) For a fee, plaintiff would either give those establishments the necessary equipment to unscramble the Program's encrypted signal or authorize those establishments' cable or satellite providers to unscramble the signal. (Affidavit of Joseph M. Gagliardi, sworn to Jan. 16, 2019 ("Gagliardi Aff."), Dkt. No. 9-2, ¶ 11.) The sublicensing fee for the Program depended on an establishment's capacity. (Id. ¶ 8) (citing "Rate

---

Default Judgment, dated Feb. 22, 2019, Dkt. No. 9, ¶¶ 4-6); Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011) (collecting cases for the proposition that "the law in this Circuit is clear that plaintiff may recover under only one of the statutes."). Because section 605 "allows for a greater recovery than does [section] 553," courts should award damages pursuant to section 605 instead of section 553, where both might apply. Pizzeria y Pupuseria Santa Rosita, 804 F. Supp. 2d at 114.

Card," annexed as Ex. 2 to Gagliardi Aff.)  An establishment like Eludz with a capacity of 100 people would have had to pay a $2,000 sublicensing fee to broadcast the Program.  (Id.)

At the time of the alleged violation, Eludz was a commercial establishment located at 1904 Utica Avenue in Brooklyn, New York.[2]  (Compl. ¶ 7.)  Its liquor license lists Dowling as its "Principal" and "Owner."  (Id. ¶ 8.)  Plaintiff alleges that it never authorized Eludz, or Dowling individually, to broadcast the Program. (Gagliardi Aff. ¶ 3.)  Yet, plaintiff's investigator purportedly visited Eludz on September 12, 2015 and saw four televisions showing the Program to between fifty-three and sixty-two patrons.[3]  (Affidavit of Gary Joseph, sworn to Sept. 16, 2015 ("Joseph Aff."), annexed as Ex. 5 to the Declaration of Joseph P. Loughlin, Esq. in Support of Application for a Default Judgment, dated Feb. 22, 2019 ("Loughlin Decl."), Dkt. No. 9-4.)  The investigator additionally reported that Eludz charged him a $10 entry fee.  (Id.)

Plaintiff alleges that it is not possible to "mistakenly, innocently or accidentally" intercept the Program and that Eludz must have intentionally intercepted the signal and pirated the Program.  (Gagliardi Aff. ¶ 9.)  Pursuant to section 605 of the FCA, plaintiff seeks $24,000 in statutory and enhanced damages.  (Mot. ¶ 5.)

---

[2] It appears that Eludz has either changed its location or permanently closed.  See https://www.yelp.com/biz/eludz-restaurant-and-lounge-brooklyn (last visited July 10, 2019).

[3] The investigator took three headcounts during the fourteen minutes that he spent at Eludz, finding fifty-three, fifty-seven, and sixty-two patrons present.  (Affidavit of Gary Joseph, sworn to Sept. 16, 2015, annexed as Ex. 5 to the Declaration of Joseph P. Loughlin, Esq. in Support of Application for Default Judgment, dated Feb. 22, 2019, Dkt. No. 9-4.)

## DISCUSSION

**A. Service of Process**

    1. <u>Adequacy of Service</u>

Before entering a default judgment, the court must consider the adequacy of the plaintiff's service of process on the defendant. <u>Freeman v. Tuan Anh Nguyen</u>, No. 13 CV 832, 2014 WL 4628766, at *2 (E.D.N.Y. May 20, 2014), <u>report and recommendation adopted</u>, 2014 WL 4628794 (E.D.N.Y. Sept. 15, 2014). Where service of process is inadequate, the court cannot assert personal jurisdiction over the defendant.[4] <u>Feng Lin v. Quality Woods, Inc.</u>, No. 17 CV 3043, 2019 WL 1450746, at *2 (E.D.N.Y. Jan. 28, 2019); <u>Bergman v. Kids By the Bunch Too, Ltd.</u>, No. 14 CV 5005, 2018 WL 1402249, at *3 (E.D.N.Y. Feb. 16, 2018), <u>report and recommendation adopted</u>, 2018 WL 1401324 (E.D.N.Y. Mar. 20, 2018).

Plaintiff has filed affidavits of service with respect to both Eludz and Dowling. (Affidavit of Service of Nasser Atrash, sworn to Oct. 9, 2018 ("Atrash Aff."); Affidavit of Service of James Boland, sworn to Oct. 5, 2018 ("Boland Aff."), both annexed as Ex. 4 to Loughlin Decl., Dkt. No. 9-3.)

In New York, a process server may properly serve an LLC by serving the Secretary of State as an agent for that entity.[5] N.Y. C.P.L.R § 311-a(a); N.Y. LTD. LIAB. CO. LAW § 303(a); <u>Mil-Spec Indus. Corp. v. Precision Ammunition, LLC</u>, No. 14 CV 7099, 2016 WL 4179945, at *3 (E.D.N.Y. Aug. 5, 2016). The Boland Affidavit indicates that plaintiff's

---

[4] However, the plaintiff's failure to submit proof of proper service is not a jurisdictional defect. <u>Manhattan Telecomms. Corp. v. H & A Locksmith, Inc.</u>, 991 N.E.2d 198, 199 (N.Y. 2013).

[5] Under New York law a plaintiff may serve a defendant LLC through the New York Secretary of State, "by personally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee." N.Y. LTD. LIAB. CO. LAW § 303(a).

4

process server delivered duplicate copies of the summons and complaint, along with the statutory fee, to Nancy Dougherty, a Business Document Specialist at the office of the Department of State in Albany. (Boland Aff.) Thus, plaintiff effected proper service on Eludz. (See id.)

Under the Federal Rules of Civil Procedure, a process server may properly serve an individual defendant by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." FED. R. CIV. P. 4(e)(2)(B). The Atrash Affidavit indicates that plaintiff's process server delivered the summons and complaint to someone named Mr. Phillips, a person of suitable age and discretion, at Dowling's purported dwelling, 1628 Miriam Court, Elmont, N.Y. 11003 (the "Miriam Court Address"). (Atrash Aff.) The Atrash Affidavit does not state whether Mr. Phillips said he resides at that address. Id. The Federal Rules also provide, however, that the plaintiff may rely on the laws governing service of process "in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). New York law allows the plaintiff to effect service of process on the defendant by (1) delivering the summons and complaint to a person of suitable age and discretion at the defendant's dwelling or usual abode and (2) mailing those documents to the defendant's last known address. N. Y. C.P.L.R. § 308(2). Here, the process server, Nasser Atrash, swore that in addition to serving the summons and complaint on a person of suitable age and discretion at defendant's dwelling, he mailed a copy of those documents to defendant's dwelling. (Atrash Aff.)

2. Proof of Service

In addition to effecting proper service, a plaintiff seeking a default judgment must offer proof of proper service. FED. R. CIV. P. 4(l)(1); N.Y. C.P.L.R. 3215(f); 4B Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure ("Wright & Miller") § 1130 (4th ed.

5

2019). While the Federal Rules do not explain what constitutes sufficient proof, "it is evident that the server should disclose enough facts to demonstrate the validity of service." Wright & Miller § 1130; see FED. R. CIV. P. 4(l)(1). Generally, a process server's affidavit is prima facie evidence of proper service. Onewest Bank N.A. v. Elliott, No. 15 CV 4395, 2016 WL 3766062, at *2 (E.D.N.Y. May 23, 2016), report and recommendation adopted, 2016 WL 3746564 (E.D.N.Y. July 8, 2016); see also Wright & Miller § 1130. To qualify as satisfactory proof of proper service, an affidavit should disclose certain essential facts. See Columbia Pictures Indus., Inc. v. Cap King, No. 08 CV 4461, 2010 WL 1221457, at *2 (E.D.N.Y. Mar. 29, 2010) (holding that a default judgment was inappropriate where the marshal's return did not specify the documents that the marshals served on the defendants). Essential facts include: the location where the process server served the defendant, the documents that the process server served on the defendant, and whether the process server served a person of suitable age and discretion. Wright & Miller § 1130 nn.6-7 (citing Cap King, 2010 WL 1221457, at *2; Scheerger v. Wiencek, 34 F. Supp. 805, 805 (W.D.N.Y. 1940)).[6]

While the Atrash and Boland Affidavits include such facts, the Atrash Affidavit does not satisfactorily establish that plaintiff effected service at Dowling's actual dwelling. (See Atrash Aff.; Boland Aff.) Plaintiff has not offered independent proof that the Miriam Court Address was defendant's dwelling at the time of service. Moreover, the Atrash Affidavit does

---

[6] Where, as here, the plaintiff effects service pursuant to Federal Rule of Civil Procedure 4(e)(1) and New York law, an affidavit proving proper service must also include a description of the person served. N.Y. C.P.L.R. § 306; see Schweitzer ex rel. Schweitzer v. Crofton, No. 08 CV135, 2010 WL 3516161, at *11 (E.D.N.Y. Sept. 1, 2010) ("[I]f a plaintiff chooses to serve a defendant under New York law, as Plaintiffs did here, that plaintiff must 'follow[ ]' New York law in its entirety."), aff'd sub nom., Schweitzer v. Crofton, 560 F. App'x 6 (2d Cir. 2014).

6

not indicate whether the process server had personal knowledge of that fact.[7] (See Atrash Aff.) "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Cap King, 2010 WL 1221457, at *2 (citing FED. R. EVID. 602). Because proof of service on Dowling is insufficient, I recommend that plaintiff's motion for a default judgment be denied as to Dowling, with leave to amend.[8]

## B. Default Judgment

By defaulting, the defendant concedes "all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). In assessing a motion for a default judgment, the court must assume the truth of the plaintiff's well-pleaded allegations. Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015). The court must then "determine whether the allegations in the complaint establish the defendants' liability as a matter of law." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015). The "decision whether to enter [a] default judgment is committed to the district court's discretion." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015).

---

[7] While it is possible that Mr. Phillips told the process server that the Miriam Court Address was Dowling's dwelling, the affidavit does not make that explicit. Courts in the Second Circuit have found similarly ambiguous affidavits wanting. See Prescription Containers, Inc. v. Cabiles, No. 12 CV 4805, 2014 WL 1236919, at *8 (E.D.N.Y. Feb. 14, 2014), report and recommendation adopted, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014); DeMott v. Bacilious, No. 11 CV 6966, 2012 WL 601074, at *6-7 (S.D.N.Y. Feb. 24, 2012). Moreover, simply establishing that a person named Jordane Dowling lived at the Miriam Court Address at the time of service would not be sufficient. Rather, plaintiff would need to establish that the Jordane Dowling who is listed as the "Principal" and "Owner" of Eludz on its liquor license resided at that address. I note that the liquor license is not in the record.

[8] "Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended." FED. R. CIV. P. 4(l)(3).

7

A party's default is not an admission of damages. Bricklayers, 779 F.3d at 189. The court need not hold a hearing if it can rely on detailed affidavits and authenticated documentary evidence to calculate damages. House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010).

1. Legal Standard

Plaintiff's claim arises under section 605(a) of the FCA, which provides, in relevant part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a). The Second Circuit has applied section 605(a) to the theft of cable communications originating as a radio or satellite communication. J & J Sports Prods., Inc. v. McAdam, No. 14 CV 5461, 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015) (citing Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002)).

2. Liability

Plaintiff's factual allegations establish Eludz's liability under section 605(a) of the FCA. Plaintiff alleges that it held exclusive closed-circuit distribution rights to the Program. (Compl. ¶ 16.) Plaintiff further alleges that Eludz showed the Program on September 12, 2015 without its permission. (See id. ¶ 11; Gagliardi Aff. ¶ 3.) "Courts in this jurisdiction have consistently found that such allegations are sufficient to establish liability under Section 605(a)." J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (collecting cases). Accordingly, I respectfully recommend that plaintiff's motion for a default judgment be granted as to Eludz.

### C. Damages

1. <u>Statutory Damages</u>

Section 605(e)(C)(i)(II) of the FCA provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(C)(i)(II). "Courts have interpreted the showing of an event on a single night as one violation." <u>McAdam</u>, 2015 WL 8483362, at *4. The court has discretion in calculating damages. <u>See, e.g.</u>, <u>LX Food Grocery</u>, 2016 WL 6905946, at *4. Courts in this district typically use either a "flat-fee" or a "per-person" method to determine statutory damages under section 605(e)(C)(i)(II). <u>See, e.g.</u>, <u>J & J Sports Prods., Inc. v. Monte Limar Sports Bar</u>, No. 15 CV 3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017). Under the "flat-fee" method, damages correspond to the amount that the defendant would have paid to broadcast the program lawfully. <u>See id.</u> Under the "per-person" method, damages equal the amount that the patrons would collectively have paid to view the program lawfully in their homes. <u>See id.</u> Courts usually award the higher of the two amounts. <u>Id.</u>

Plaintiff requests statutory damages of $6,000—three times the $2,000 licensing fee that defendants would have paid to broadcast the Program lawfully. (Pl.'s Mem. at 8.) Plaintiff asks the court not to use the "flat-fee" or the "per-person" method on the grounds that neither will adequately compensate its loss or effectively deter piracy. <u>Id.</u> at 6, 8. However, courts in this district address concerns about deterrence and compensation by using whichever of the two typical methods of calculating damages—the "flat-fee" or the "per-person" method— results in the higher sum. <u>See</u> <u>Joe Hand Promotions, Inc. v. Algesk Inc.</u>, No. 12 CV 5356, 2014 WL 1028947, at *6 (E.D.N.Y. Mar. 13, 2014) (collecting cases that illustrate this proposition and

9

recommending the higher "per-person" calculation because of "the difficulty in detecting this type of violation and the need to deter piracy.").[9]

In keeping with precedent in the Second Circuit, I respectfully recommend that the court apply whichever of the two typical methods of calculating damages—the "flat-fee" or the "per-person" method—results in the higher award. Defendants would have paid $2,000 to broadcast the Program lawfully. (Gagliardi Aff. ¶ 8, Ex. 2). While defendants have not offered evidence of how much each patron would have paid to watch the Program lawfully at home, courts in this district assume a per-person residential fee of $54.95. See McAdam, 2015 WL 8483362, at *4 (collecting cases). Multiplying that number by the approximately fifty-seven patrons at Eludz on the night of broadcast results in an award of $3,132.15. See Joe Hand Promotions, Inc. v. Trenchard, No. 3:12 CV 1099, 2014 WL 854537, at *3 (D. Conn. Mar. 3, 2014) (calculating statutory damages by multiplying the residential fee by the rough average of the investigator's three headcounts). Therefore, I respectfully recommend that plaintiff be awarded $3,132.15 in statutory damages.

---

[9] Plaintiff cites Kingvision Pay-Per-View, Ltd. v. Jasper Grocery as support for its request that the court reject the "flat-fee" method. (Pl.'s Mem. at 6) (citing Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001)). There, the court was concerned that a damages award based only on the plaintiff's licensing fee would undercompensate it. 152 F. Supp. 2d at 442. However, in Jasper Grocery, unlike here, the court could not fairly approximate the licensing fee because the defendant was a grocery store and "[t]here is usually no information on the capacity of a grocery store, as opposed to the capacity of a restaurant." Id. While the award the court settled on in that case was "well in excess of the probable licensing fee" id., in recent cases in this district, statutory damages awards have not typically exceeded the licensing fee or the amount that the "per-person" method prescribes. J & J Sports Prods., Inc. v. Orellana, No. 18 CV 2052, 2019 WL 1177719, at *5 (E.D.N.Y. Mar. 13, 2019) (declining to "deviate from the typical decisions in the Second Circuit"); see also Monte Limar Sports Bar, 2017 WL 933079, at *4 (describing the two typical methods of calculating damages in this district).

2. <u>Enhanced Damages</u>

Section 605(e)(3)(C)(ii) of the FCA gives the court the discretionary power to increase a damages award up to $100,000 when it finds a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests treble damages. (Pl.'s Mem. at 9-10.) Defendants could not have innocently shown the Program without authorization; therefore, defendants' violation was willful. See <u>J & J Sports Prods., Inc. v. Tacqueria Juarez Rest. Inc.</u>, No. 17 CV 4158, 2018 WL 2056181, at * 6 (E.D.N.Y. Mar. 16, 2018) (finding that the defendant "could not have involuntarily intercepted and exhibited the Event given that the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed"), <u>report and recommendation adopted</u>, 2018 WL 2048370 (E.D.N.Y. May 2, 2018); <u>Time Warner Cable of N.Y.C. v. Googie's Luncheonette, Inc.</u>, 77 F. Supp. 2d, 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously").

In determining whether a willful violation warrants enhanced damages, courts consider evidence of (1) the defendant's repeated violations, (2) significant actual damage to the plaintiff, (3) the defendant's substantial unlawful monetary gains, (4) the defendant's advertising of the event, and (5) the defendant's collection of a cover charge or premiums for food and drinks. <u>J & J Sports Prods., Inc. v. Chulitas Enter. Corp.</u>, No. 12 CV 3177, 2014 WL 917262, at *5 (E.D.N.Y. Mar. 10, 2014). Plaintiff's investigator reported that defendants collected a $10 cover charge from each patron on the night of the broadcast. (Joseph Aff. at 1.) Therefore, I find that an award of enhanced damages is appropriate.

Courts have calculated enhanced damages in several ways. While some courts have awarded no enhanced damages for willful violations, others have awarded enhanced

11

damages in amounts equal to, twice as great as, or three times as great as the statutory damages. J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc., 17 CV 2196, 2018 WL 2078482, at *7-8 (E.D.N.Y. Feb. 27, 2018) (collecting cases), report and recommendation adopted, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018). In this case, I find that an award of enhanced damages twice as great as the statutory damages is appropriate. See, e.g., McAdam, 2015 WL 8483362, at *5 (awarding enhanced damages of twice the statutory damages where the defendant collected a $20 cover charge and advertised the event); Chulitas Enter. Corp., 2014 WL 917262, at *5-6 (awarding enhanced damages of twice the statutory damages where fifty-seven patrons were present). Accordingly, I respectfully recommend that plaintiff be awarded enhanced damages of $6,264.30.

3. Attorney's Fees, Costs, and Interest

Section 605(e)(3)(B)(iii) of the FCA requires courts to "direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff asks for permission to submit a motion for costs and attorney's fees thirty days from the date of entry of judgment. (Pl.'s Mem. at 10.) Because plaintiff is entitled to recover full costs and reasonable fees under the statute, I recommend that plaintiff be permitted to make its request in a separate motion, with supporting documentation. See Joe Hand Promotions, Inc. v. Beer Closet, Inc., No. 17 CV 3735, 2018 WL 4138938, at *6 (permitting plaintiff to move separately for attorney's fees), report and recommendation adopted, 2018 WL 4119548 (E.D.N.Y. Aug. 29, 2018).

Plaintiff also seeks pre- and post-judgment interest. (Mot. ¶ 5.) The Second Circuit "has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization when the awards were fair, equitable, and necessary to compensate the

wronged party fully." Garden City Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2016) (internal quotation marks and citations omitted).  However, courts generally do not award pre-judgment interest for FCA violations.  See, e.g., LX Food Grocery, 2016 WL 6905946, at *5.  Therefore, I respectfully recommend that plaintiff's request for pre-judgment interest be denied.  Plaintiff is, however, entitled to post-judgment interest on damages. 28 U.S.C. § 1961(a).  Post-judgment interest accrues at the federal statutory rate from the date of entry of judgment until the date the judgment is paid in full.  Id.; see also Joe Hand Prods., Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *14 (E.D.N.Y. May 29, 2013); J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at * 5 (E.D.N.Y. Nov. 7, 2011).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that (1) plaintiff's motion be granted as to Eludz and that plaintiff be awarded $3,132.15 in statutory damages and $6,264.30 in enhanced damages, for a total of $9,396.45, plus post-judgment interest; (2) plaintiff's motion be denied as to Dowling, with leave to amend; and (3) plaintiff be permitted to file a separate motion for attorney's fees and costs within thirty (30) days of the date of Judge Brodie's order on this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Brodie and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Plaintiff is directed to serve copies of this Report and Recommendation on the defaulting defendants by regular mail, and to file proof of service with the Clerk of the Court within three (3) days.

Respectfully submitted,

/s/
ROBERT M. LEVY
Unites States Magistrate Judge

Dated: Brooklyn, New York
August 7, 2019